IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-10-00107-CV

 

In
re Trent Alvon Smith

 

 



Original Proceeding

 

 



MEMORANDUM  Opinion



 

            Trent Alvon Smith seeks a
writ of mandamus compelling Respondent, the Honorable Robyn Flowers, District
Clerk of Walker County, to file his “Petition for Texas Torts Claim.”[1] 
We will deny Smith’s request for mandamus relief.

            When a district clerk
refuses to accept a pleading for filing, the party should attempt to file the
pleading directly with the district judge, explaining in a verified motion that
the clerk refused to accept the pleading for filing.  Should the district judge
refuse to accept the pleading for filing, this Court would have jurisdiction
under our mandamus power to direct the district judge to file the pleading.

 

In re Simmonds, 271 S.W.3d 874, 879 (Tex. App.—Waco 2008,
orig. proceeding) (citation and footnote omitted) (quoting In re Bernard,
993 S.W.2d 453, 455 (Tex. App.—Houston [1st Dist.] 1999, orig. proceeding)
(O’Connor, J., concurring)).

Here, there is no indication that Smith
followed this procedure.  Accordingly, we deny his mandamus petition.[2]

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Petition denied

Opinion
delivered and filed April 7, 2010

[OT06]








 









[1]
              We apply Rule of
Appellate Procedure 2 to disregard numerous deficiencies in Smith’s mandamus
pleadings, including his failure to serve copies on Respondent Flowers.  See
Tex. R. App. P. 2, 9.5.





[2]
              Smith also filed a
motion for leave to file his mandamus petition.  That motion is dismissed as
moot.  See Tex. R. App. P.
52 cmt. (“The requirement of a motion for leave in original proceedings is
repealed.”); In re McGee, 213 S.W.3d 405, 406 n.2 (Tex. App.—Houston
[1st Dist.] 2006, orig. proceeding) (per curiam).








: 'CG Times', serif">          In point one, Coleman alleges that the State's argument during the punishment phase was
"calculated to make the members of the jury feel pressure to live up to the expectations of the
community." The prosecutor began his final argument by referring to the fact that Coleman had
been charged with capital murder and the jury found him guilty of only aggravated robbery. He
explained that it was his duty to convince the jury of the greater charge and told them, "I didn't
do my job." He further stated, "[I]f you give him ten years probation or some s[h]ort sentence,
I submit to you that you might just as well have found him not guilty . . . . You are not going to
send any message to the community that this kind of conduct is intolerable." The prosecutor
closed his argument by stating, "I feel like I failed the State the first part of this trial. I hope you
don't fail the citizens of this community by giving him a short sentence." Coleman objected to
the argument on the ground that "it invites the jury to feel pressure from the community," and the
court overruled his objection.
          Proper jury argument falls within one of the following four categories: (1) a summary of
the evidence; (2) a reasonable deduction from the evidence; (3) an answer to the opponent's
argument; or (4) a plea for law enforcement. Coleman v. State, 881 S.W.2d 344, 358 (Tex. Crim.
App. 1994), cert. denied, --- U.S. ---, 115 S.Ct. 763, 130 L.Ed.2d, 660 (1995); Harris v. State,
827 S.W.2d 949, 963 (Tex. Crim. App.), cert. denied, --- U.S. ---, 113 S.Ct. 381, 121 L.Ed.2d
292 (1992). The State may argue the impact of the jury's verdict on the community as a form of
a plea for law enforcement. Borjan v. State, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990). The
State may not, however, argue that the community expects or demands a particular punishment. 
Id. at 56 (citing Cortez v. State, 683 S.W.2d 419, 420 (Tex. Crim. App. 1984)). 
           The Court of Criminal Appeals has disapproved arguments such as: "The people of
Nueces County expect you to put this man away." Pennington v. State, 171 Tex. Crim. R. 130,
345 S.W.2d 527, 528 (1961); "[T]he only punishment that you can assess that would be any
satisfaction at all to the people of [Nueces] county would be life." Cortez, 683 S.W.2d at 421; and
"There are over a million people that stand between him and the penitentiary. They'd want him
to go there if they knew what he did." Prado v. State, 626 S.W.2d 775, 776 (Tex. Crim. App.
1982). These arguments have been disapproved because the effect of the language used was to
ask the jury to convict or punish based upon community sentiment rather than evidence. Cortez,
683 S.W.2d at 421.
          Coleman complains that, by explicitly telling the jury that they would fail the community
if they returned a short sentence, the prosecutor was arguing that the community expected the jury
to return a lengthy sentence. The prosecutor described to the jury how he felt that he "failed the
State" because he was unable to convince them to return the verdict the State wanted or expected,
i.e., capital murder. He then told the jury by analogy, "I hope you don't fail the citizens of this
community by giving him a short sentence." Coleman asserts that, if returning a "short sentence"
would "fail the citizens of th[e] community," it follows that the community wanted or expected the
jury to return a lengthy sentence. 
          The State argues that, when read in context, the argument requested the jury to protect the
community and to send them a message. The prosecutor began his argument by reminding the
jury that "[w]e all live in a society that's permeated with crime." He reminded the jury that they
cannot ignore some crimes simply because they occur in a certain part of town


: 
It is like with our bodies. We don't say, well, I have a cancer in my toe,
so we'll ignore that. We treat cancer in the brain seriously, but cancer in the toe
we don't, because that cancer in the toe can spread to the rest of the body and kill
it, just like crime that occurs in one area of the city can eventually slop over and
spread to other areas.
He then illustrated how jury verdicts could be interpreted by the community:
The defendant took an oath to tell you the truth. By your verdict you have
branded him a liar because he told you, which under the evidence was an absolute
lie, that he didn't know anything about this robbery. ["]Golly, I didn't know it was
going down.["] Well, you knew that was a lie. You convicted him.
 
You know, Adrian Martin got up here and told you, yeah, I knew what was
going down. And he is serving a sentence now for capital murder. And he is not
out walking the street.
 
People know what goes on in these courtrooms. Word gets out. Do you
want it out on the street, said Adrian Martin told the truth and owned up and pled
guilty, look what he got. Jason Coleman came in and lied to a jury, and they sent
him out on probation and gave him a short time. Think about that. Is that justice? 
I don't think it is. And I hope you don't either.
The State contends that when the prosecutor asked the jury not to "fail the citizens of this
community by giving him a short sentence," he was simply imploring the jury: 1) not to fail to
protect the community by giving Coleman a chance for early release; and 2) not to fail to send a
message to the community that this type of crime will not be tolerated.  
          We believe that, when read in context, the prosecutor's argument did not ask the jury to
lend its ear to the community, but instead, asked the jury to be the voice of the community. Id. 
Accordingly, we find that the court did not err by overruling Coleman's objection to the argument. 
We overrule point one.
LESSER-INCLUDED OFFENSE
          In points two and three, Coleman complains that the court erred by instructing the jury on
the lesser-included offense of aggravated robbery because there was insufficient evidence to
support an instruction or conviction for aggravated robbery. Coleman did not request the
instruction, nor did he object to it at trial. He now contends that had the court not given the jury
the instruction, he would have been found "not guilty" of all charges.
          In determining whether a jury must be instructed concerning a lesser-included offense, a
two-step analysis must be applied. Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim.
App.), cert. denied, --- U.S. ---, 114 S.Ct. 313, 126 L.Ed.2d 260 (1963). First, the lesser-included offense must be included within the proof necessary to establish the offense charged. Id.
at 673. Second, there must be some evidence in the record that would permit a jury rationally to
find that if the defendant is guilty, he is only guilty of the lesser offense. Id. (clarifying the test
in Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981)). 
          Aggravated robbery has been established as a lesser-included offense of capital murder. 
Belton v. State, 900 S.W.2d 886, 900 (Tex. App.—El Paso 1995, pet. ref'd). Thus, only the
second prong of the Rousseau test remains, i.e., whether any evidence exists in the record that
would permit a rational jury to find that Coleman is guilty only of the lesser offense of aggravated
robbery. See Bignall v. State 887 S.W.2d 21, 23 (Tex. Crim. App. 1994). Anything more than
a scintilla of evidence is sufficient to warrant a lesser charge. Id. If the evidence warrants,
"[b]oth the prosecution and the defendant have the right to insist upon and obtain the submission
of a lesser-included offense charge." Richardson v. State, 832 S.W.2d 168, 170 (Tex.
App.—Waco 1992, pet. ref'd). Accord Locke v. State, 860 S.W.2d 494, 495 (Tex. App.—Waco
1993, pet. ref'd); Gottlich v. State, 822 S.W.2d 734, 739 (Tex. App.—Fort Worth 1992, pet.
ref'd).
          As noted, Coleman did not object to the court's charge on the grounds that the evidence
did not support submitting the lesser-included offense of aggravated robbery. The Court of
Criminal Appeals has made clear that "[b]y invoking the benefit of the lesser included offense
charge at trial in not objecting to its submission to the jury, an accused will be estopped from then
complaining on appeal that the evidence failed to establish all the elements of the offense." 
Bradley v. State, 688 S.W.2d 847, 853 (Tex. Crim. App. 1985). Accord State v. Lee, 818
S.W.2d 778, 781 (Tex. Crim. App. 1991); Richardson, 832 S.W.2d at 171; Mello v. State, 806
S.W.2d 875, 877 (Tex. App.—Eastland 1991, pet. ref'd). Further, failure to object to the charge
on the grounds that the evidence does not support submitting a lesser-included offense indicates
acquiescence on the part of the accused that the lesser offense was raised by the evidence. 
Bradley, 688 S.W.2d at 853; Richardson, 832 S.W.2d at 171.
          For these reasons, we hold that Coleman is estopped from complaining of the lesser-included charge on aggravated robbery. We overrule points two and three.
CONCLUSION
          Having concluded that the court did not err in overruling Coleman's objection to the
prosecutor's closing argument and that Coleman is estopped from asserting that the court erred
in charging on the lesser-included offense of aggravated robbery, we affirm the judgment.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Justice Cummings and
          Justice Vance
Affirmed
Opinion delivered and filed February 21, 1996
Do not publish